H. Ty Kharazi, Esq. SBN 187894
**YARRA LAW GROUP**
2000 Fresno Street, Suite 300
Fresno, CA 93721
Telephone: (559) 441-1214
Facsimile: (559) 441-1215

Attorneys for Plaintiff,
LINDA K. PFEIFFER

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| LINDA PFEIFFER,<br><br>Plaintiff,<br><br>v.<br><br>AMTRAK USA, A Business Entity Form Unknown, COACH USA, A Nevada Corporation, THRUWAY, INC. A California Corporation, GREYHOUND LINES, INC. A Delaware Corporation, and DOES 1 through 50, inclusive,<br><br>Defendants. | Case No.<br><br>*Civil Unlimited*<br><br>**COMPLAINT ASSERTING DENIAL OF RIGHT OF ACCESS UNDER THE AMERICANS WITH DISABILITIES ACT; REQUEST FOR INJUNCTIVE RELIEF, DAMAGES, ATTORNEYS' FEES AND COSTS (ADA)**<br><br>JURY TRIAL DEMANDED |

COMES NOW Plaintiff LINDA PFEIFFER and alleges the following against Defendants.

## I.  PARTIES

1.      Plaintiff LINDA PFEIFFER is a resident of County of Stanislaus and lives in Turlock. She cannot ambulate without a wheelchair.

2.      Defendant AMTRAK USA, is a business entity form unknow. AMTRAK provides rail service throughout United States, for transportation of people and their cargo.

2.      COACH USA,  is a Nevada Corporation which is believed to have subcontracted to provide bus service for AMTRAK where there is no rail service.

1  3.    THRUWAY, INC. , is a California Corporation which is believed to have subcontracted to

2  provide ticketing service for AMTRAK.

3  4.    GREYHOUND LINES, is a Delaware Corporation which is believed to have subcontracted

4  to provide bus service for AMTRAK where there is no rail service. It is believed and thereon

5  alleged that GREYHOUND LINES may have subcontracted with COACH USA to provide bus

6  service for the route which is the subject of this litigation.

7  5.    DOE 1 is the driver of the bus who drove Plaintiff from Las Vegas, Nevada to Bakersfield,

8  California, on June 10, 2019.

9  6.    The name, capacity and involvement of Defendants named DOES 2-50 are not known to

10  Plaintiff. Plaintiff believes and there on alleges that these entities, individuals, and persons are

11  either connected to, or are subsidiaries, sister companies or affiliates of each and every defendant

12  herein.  It is further alleged that these DOE defendants are jointly and severally liable for the

13  damages claimed herein.

14  7.    Defendants AMTRAK, COACH USA, GREYHOUND LINES, THRUWAY, INC. and

15  DOES 1-50 are collectively referred to herein as DEFENDANTS, unless they are specifically

16  named on a claim

17  ## II.  SUMMARY and  JURISDICTION

18  8.    This is a civil rights action by plaintiff for discrimination by DEFENDANTS.

19  9.    The events complained of occurred on June 10, 2019 at the Barstow Terminal of the

20  DEFENDANTS.

21  10.    The primary claims raised here are under 28 U.S.C. §§ 1331 and 1343 for ADA claims.

22  11.    This court has supplemental jurisdiction for claims brought under parallel California law –

23  arising from the same nucleus of operative facts – is predicated on 28 U.S.C. § 1367.

24  12.    Plaintiff's claims are authorized by 28 U.S.C. §§ 2201 and 2202.

25  13.    Plaintiff seeks damages, injunctive and declaratory relief, attorney fees and costs, against

26  Defendants AMTRAK, COACH USA, GREYHOUND LINES, THRUWAY, INC., and DOE 1.

27

28

### III.   VENUE

14.     All actions complained of herein took place within the jurisdiction of this Court as the events occurred in Barstow, California within the San Bernardino County.

15.     DEFENDANTS operated bus service which provided transportation from Las Vegas, Nevada to Bakersfield California to connected AMTRAK passengers to the rail service which routes include Bakersfield to Modesto, California.

### IV.   FACTS

16.     Plaintiff requires the use of a wheelchair when traveling about in public.  Consequently, Plaintiff is "physically disabled," as defined by all applicable California and United States laws, and a member of the public whose rights are protected by these laws.

17.     The bus service provided by DEFENDANTS is a public accommodation facility, open to the public whose operation affects commerce.

18.     On June 10, 2019, Plaintiff boarded a bus to take her from Las Vegas to Bakersfield, wherein she was to board an AMTRAK train that brought her to Modesto station. In order to board the bus, Plaintiff rolled her wheelchair on the bus's ramp and to be elevated onto the bus.  The bus driver refused to allow Plaintiff use her wheelchair to ambulate onto the bus. Instead, he demanded that Plaintiff hold on the railings, hold herself up and use the lift while standing to enter the bus. Once on the bus, Plaintiff hoisted herself onto a seat. Her wheelchair was brought up later. Although Plaintiff's son was accompanying her, he was not allowed to assist Plaintiff in boarding the bus by the bus driver.

19.     The bus had a "pit stop" in Barstow, California. When it arrived at the Barstow station, Plaintiff requested that she and another passenger on the bus who was also disabled to be allowed to disembark so that they could use the restroom and buy some food. DOE 1, bus driver, refused to allow them to disembark, refused to allow them to use the store at the station and refused to engage the ramp to lower Plaintiff so that Plaintiff can use the facilities like all other persons.

20.     Plaintiff then asked her son who was accompanying her to disembark and buy some food. Plaintiff was forced to sit on the bus while her son was send off to get food, unlike all other able bodied passengers.

21.     When Plaintiff insisted that she had to use the bathroom, DOE 1 instructed her to use the "emergency toilet" provided on the bus. The emergency toilet does not have accessible toilet facilities, has no lift arm and it is not large enough for Plaintiff to use in her disabled condition.

22.     When Plaintiff protested, DOE 1 slammed the toilet door so hard it ricochet back and hit Plaintiff on her knees causing bruising. Because of the foregoing, Plaintiff was forced to hold her urges, very uncomfortably for several hours.

23.     When the other disabled passenger protested, DOE1 raised his voice, directed him to use the toilet and forced Plaintiff watch another man urinate or try to use the toilet.

24.     After all passengers came on board, the bus driver took off attempting to leave Plaintiff's son behind who has gone to the store to buy food.  When Plaintiff protested stating that her son left a bit later because he was trying to help her disembark and use the bathroom, DOE 1 became even more angry, slamming seats and breaking a laptop that Plaintiff had brought on board.

25.     Plaintiff was, and continues to be, deterred from traveling with AMTRAK because Plaintiff knows that AMTRAK, COACH USA, GREYHOUND LINES, THRUWAY, INC. services, facilities, privileges, advantages, and accommodations were and are unavailable to Plaintiff due to Plaintiff's physical disabilities.

26.  Plaintiff enjoys the services offered by AMTRAK, COACH USA, GREYHOUND LINES, THRUWAY, INC., and will return to travelling through them once the barriers are removed.

27.     DEFENDANTS knew, or should have known, that these elements and areas of the were inaccessible, violate state and federal law, and interfere with (or deny) access to the physically disabled.  Moreover, AMTRAK, COACH USA, GREYHOUND LINES, THRUWAY, INC. have the financial resources to remove these barriers (without much difficulty or expense), and make the bus service accessible to the physically disabled.

28.   At all relevant times, DEFENDANTS have possessed and enjoyed sufficient control and authority to modify the service to remove impediments to wheelchair access and to allow disabled passengers to disembark at the stops so that they can use the public restrooms like all other abled bodied passengers did.

29.   Plaintiff further alleges that the (continued) presence of barriers by DEFENDANTS is so obvious as to establish DEFENDANTS discriminatory intent.  On information and belief, Plaintiff avers that evidence of this discriminatory intent includes DEFENDANTS' refusal to adhere to relevant standards and/or basic human decency.

30.   It would have literally taken minutes to allow Plaintiff to disembark, use the restroom and return to the bus just like all other passengers did.  That Plaintiff's disability was the only reason was for DOE1 not allowing him disembark shows the discriminatory intent by the DEFENDANTS.
.

## V.   FIRST CLAIM
### Americans with Disabilities Act of 1990
### Denial of "Full and Equal" Enjoyment and Use
### Against All DEFENDANTS

31.   Plaintiff incorporates the allegations contained in paragraphs 1 through 34 for this claim.

32.   Title III of the ADA holds as a "general rule" that no individual shall be discriminated against on the basis of disability in the full and equal enjoyment (or use) of goods, services, facilities, privileges, and accommodations offered by any person who owns, operates, or leases a place of public accommodation.  42 U.S.C. § 12182(a).

33.   DEFENDANTS discriminated against Plaintiff by denying Plaintiff "full and equal enjoyment" and use of the services, facilities, privileges, and accommodations of the rest stop during each visit and each incident of deterrence.

34.   Here, Plaintiff alleges that DEFENDANTS can easily remove the barriers without much difficulty or expense, and that DEFENDANTS violated the ADA by failing to remove those barriers, when it was readily achievable to do so.

35.   In the alternative if it was not "readily achievable" for Defendants to remove

1   the  barriers, then Defendants violated the ADA by failing to make the required services available

2   through alternative methods, which are readily achievable.

Failure to Make an Altered Facility Accessible

3

4   36.     The ADA also requires that services to be provided to enhance their usability so that they

5   are made readily accessible to individuals with disabilities to the maximum extent feasible.  42

6   U.S.C. § 12183(a)(2).  In this case, it would include allowing disabled passengers to disembark to

7   use the rest room which literally will not cost anything.

Failure to Modify Existing Policies and Procedures

8

9   37.     The ADA also requires reasonable modifications in policies, practices, or procedures, when

10  necessary to afford such services, facilities, or accommodations to individuals with disabilities,

11  unless the entity can demonstrate that making such modifications would fundamentally alter their

12  nature.  42 U.S.C. § 12182(b)(2)(A)(ii).

13  38      Here, Defendants violated the ADA by failing to make reasonable modifications in policies,

14  practices, or procedures at the Facility when these modifications were necessary to afford (and

15  would not fundamentally alter the nature of) these services, facilities, or accommodations.

16  39.     Plaintiff seeks all relief available under the ADA (i.e., injunctive relief, attorney fees, costs,

17  legal expense) for these aforementioned violations.  42 U.S.C. § 12205.

18  40.     Plaintiff seeks a finding from this Court (i.e., declaratory relief) that Defendants violated the

19  ADA in order to pursue damages under California's Unruh Civil Rights Act or Disabled Persons

20  Act.

VI.     SECOND CLAIM<br>
Unruh Civil Rights Act<br>
Against All DEFENDANTS

21

22

23  41.     Plaintiff incorporates the allegations contained in paragraphs 1 through 44 for this claim.

24  42.     California Civil Code § 51 states, in part, that:  All persons within the jurisdiction of this

25  state are entitled to the full and equal accommodations, advantages, facilities, privileges, or services

26  in all business establishments of every kind whatsoever.

27  43.     California Civil Code § 51.5 also states, in part that:  No business establishment of any kind

28  whatsoever shall discriminate against any person in this state because of the disability of the person.

44.     California Civil Code § 51(f) specifically incorporates (by reference) an individual's rights under the ADA into the Unruh Act.

45.     Defendants' aforementioned acts and omissions denied the physically disabled public – including Plaintiff – full and equal accommodations, advantages, facilities, privileges, and services in a business establishment (because of their physical disability).

46.     These acts and omissions (including the ones that violate the ADA) denied, aided, or incited a denial, or discriminated against Plaintiff by violating the Unruh Act.

48.     Plaintiff was damaged by Defendants' wrongful conduct, and seeks statutory minimum damages of four thousand dollars ($4,000) for each offense. Plaintiff also seeks compensatory and special damages for his physical injuries and general damages for pain and suffering.

49.     Plaintiff further seeks to enjoin Defendants from violating the Unruh Act (and ADA), and recover reasonable attorneys' fees and costs incurred under California Civil Code § 52(a).

## IX.     PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays judgment against DEFENDANTS, and each of them, for:

1.     Injunctive relief, preventive relief, or any other relief the Court deems proper.

2.     Declaratory relief that Defendants violated the ADA for the purposes of Unruh Act damages.

3.     Statutory minimum damages under section 52(a) of the California Civil Code for at least three offenses and according to proof.

4.     Special and general damages according to proof.

5.     Attorneys' fees, litigation expense, and costs of suit.

6.     Interest at the legal rate from the date of the filing of this action.

7.     For such other and further relief as the Court deems proper.

Dated: May 3, 2020                          Respectfully submitted,

                                            YARRA LAW GROUP

                                            H/ Ty Kharazi, Attorney for Plaintiff